1

2

3                                                                O

4

5

6

7

8                    UNITED STATES DISTRICT COURT

9                   CENTRAL DISTRICT OF CALIFORNIA

10

11   CAROLYN KOHLER, JOANNA      )   Case No. EDCV 07-782-VAP
     PEREZ and VANESSA           )   (CWx)
12   MCKEEFRY, individuals on    )
     behalf of themselves and    )   **[Motion filed on May 9,**
13   all others similarly        )   **2008]**
     situated,                   )
14                               )   **ORDER DENYING PLAINTIFFS'**
                      Plaintiffs,)   **MOTION FOR CLASS**
15                               )   **CERTIFICATION**
          v.                     )
16                               )
     HYATT CORPORATION and       )
17   DOES 1 through 50,          )
     inclusive,                  )
18                               )
                      Defendants.)
19   _____)

20        Plaintiffs' Motion for Class Certification came

21   before this Court for hearing on July 7, 2008.  After

22   reviewing and considering all papers filed in support

23   of, and in opposition to, the Motion, as well as the

24   arguments advanced by counsel at the hearing, the Court

25   DENIES Plaintiffs' Motion.

26   ///

27   ///

28

# I. BACKGROUND

**A.   Procedural Background**

Plaintiffs Carolyn Kohler, Joanna Perez, and Vanessa McKeefry filed a putative class-action Complaint in the California Superior Court for the County of Riverside on April 26, 2007, against Defendant Hyatt Corporation. Hyatt removed the case to this Court on June 22, 2007.

After the Court dismissed the Complaint by Minute Order dated August 6, 2007, Plaintiffs filed a First Amended Complaint ("FAC") on August 17, 2007.  The FAC alleges claims on behalf of non-exempt Hyatt employees, paid on an hourly basis, who work in the food and beverage, catering, and kitchen areas of Hyatt hotels in California.  (FAC ¶ 17.)  Plaintiffs bring claims for (1) nonpayment of wages as required by the California Labor Code, and (2) unfair business practices under the California Business and Professions Code.  Specifically, Plaintiffs allege that Hyatt failed "to ensure or provide appropriate meal and rest breaks as provided by law," and adopted an illegal "tip pooling" policy.

By Order dated March 12, 2008, the Court granted in part Defendant's Motion to Dismiss Class Allegations and Deny Class Certification.  By that Motion, Defendant had attempted to forestall class certification by showing that Plaintiffs could not make a showing of class

1  certification on behalf of a statewide class of Hyatt
2  food service employees.  The Court ordered that
3  Plaintiffs could proceed with briefing of class
4  certification on behalf of a putative class of food
5  service employees at the one Hyatt hotel where
6  Plaintiffs are employed.

7

8      On May 9, 2008, Plaintiffs filed a Motion for Class
9  Certification under Rule 23 ("Motion" or "Mot."), along
10 with the Declaration of André E. Jardini ("Jardini
11 Decl.").  On May 30, 2008, Defendant filed Opposition
12 ("Opp'n"), along with Objections to Plaintiffs' Evidence
13 ("Def.'s Obj.") and an Appendix of Evidence providing
14 nine declarations.  Plaintiffs filed a Reply on June 20,
15 2008.  On June 24, 2008, Defendant filed a Statement of
16 Recent Decision.

17

18 **B.   Factual Allegations**
19     On behalf of a putative class, Plaintiffs allege
20 that Hyatt "has failed to ensure that its employees take
21 a required meal break and has not provided required rest
22 breaks," as required by Labor Code section 512.  (FAC ¶
23 36.)  An employee who misses a meal or rest break may
24 recover one hour of pay for each break under Labor Code
25 section 226.7.  (Id. ¶ 37.)
26 ///
27 ///
28

1   Plaintiffs further allege that Hyatt adopted an
2   illegal "tip pooling" practice with respect to the
3   putative class.  (<u>Id.</u> ¶ 12.)  "Tip pooling" is "defined
4   as the sharing of tips earned by hourly employees with
5   supervisors and owners."  (<u>Id.</u> ¶ 14.)

6
7                        **II. LEGAL STANDARD**
8   To proceed as a class action under Rule 23 of the
9   Federal Rules of Civil Procedure, Plaintiffs must
10  demonstrate the following criteria:
11          (1) the class is so numerous that joinder
12          of   all   members   is   impracticable
13          ["numerosity"], (2) there are questions
14          of  law  or  fact  common  to  the  class
15          ["commonality"],  (3)  the  claims  or
16          defenses  of  the  representative  parties
17          are typical of the claims or defenses of
18          the  class  ["typicality"],  and  (4)  the
19          representative  parties  will  fairly  and
20          adequately  protect  the  interests  of  the
21          class ["adequacy of representation"].
22  Fed. R. Civ. P. 23(a)

23
24  In addition to these prerequisites, a plaintiff must
25  satisfy one of the prongs of Rule 23(b) in order to
26  maintain a class action.  Where, as here, a plaintiff
27  ///
28

4

moves for class certification under Rule 23(b)(3), the
plaintiff must show that:

> the questions of law or fact common to class
> members predominate over any questions
> affecting only individual members, and that a
> class action is superior to other available
> methods for fairly and efficiently
> adjudicating the controversy.

Fed. R. Civ. P. 23(b)(3).

Plaintiff also seeks certification under Rule
23(b)(1), which allows for maintenance of a class action
where:

> prosecuting separate actions by or against
> individual class members would create a risk
> of:
> (A) inconsistent or varying adjudications
> with respect to individual class members that
> would establish incompatible standards of
> conduct for the party opposing the class; or
> (B) adjudications with respect to individual
> class members that, as a practical matter,
> would be dispositive of the interests of the
> other members not parties to the individual
> adjudications or would substantially impair
> or

///

1  ///

2      impede   their   ability   to   protect   their

3      interests.

4  Fed. R. Civ. P. 23(b)(1).

5

6      Class actions have two primary purposes: to further

7  judicial economy by avoiding multiple suits and to

8  protect the rights of persons who "might not be able to

9  present claims on an individual basis." Haley v.

10 Medtronic, Inc., 169 F.R.D. 643, 647 (C.D. Cal. 1996).

11 The Court acts as a fiduciary for the absent class

12 members, and "must conduct an independent and rigorous

13 analysis of the moving party's claims to examine whether

14 the requirements of Rule 23 are met." In re Paxil

15 Litig., 212 F.R.D. 539, 543 (C.D. Cal. 2003) (quotation

16 and citation omitted).

17

18      Plaintiffs, as the proponents of class

19 certification, bear the burden of establishing that the

20 proposed class meets the Rule 23 requirements. See

21 Doninger v. Pac. Nw. Bell, Inc., 564 F.2d 1304, 1308

22 (9th Cir. 1977); Zinser v. Accufix Research Inst., 253

23 F.3d 1180, 1186 (9th Cir. 2001).   Though "an extensive

24 evidentiary showing . . . is not required," Plaintiffs

25 must provide "sufficient information to form a

26 reasonable judgment." Blackie v. Barrack, 524 F.2d 891,

27 901 & n.17 (9th Cir. 1975).   The moving party "'must

28

1  provide facts to satisfy these requirements; simply
2  repeating the language of the rules  . . . is
3  insufficient.'"  Id. (quoting Bates v. United Parcel
4  Serv., 204 F.R.D. 440, 443 (N.D. Cal. 2001)) (ellipsis
5  in original).  A court may consider both the allegations
6  in a plaintiff's complaint as well as extrinsic material
7  in deciding whether to certify a class.  Blackie, 524
8  F.2d at 900-01

9
10                          **IV. DISCUSSION**
11      Plaintiffs, who are or were employees of the
12  Pianissimo Lounge and Bar at the Hyatt Grand Champions
13  hotel in Indian Wells, California, seek certification of
14  a class defined as follows:

15              All    current    and    former    nonexempt
16              employees of Hyatt Grand Champions Resort
17              & Spa, Food & Beverage Department, for a
18              period  from  four  years  predating  the
19              filing of the complaint.
20  (Mot. at 3:10-13.)  The class they seek to certify
21  therefore includes Hyatt Grand Champions employees who
22  worked in other dining establishments at the hotel,
23  including the following: the Lantana restaurant
24  (formerly known as Santa Rosa Grille), the Roadrunner
25  Café, the Espresso Deli and Café, the Oasis Pool Bar,
26  the Room Service Department, Banquet and Catering
27  Services, and the kitchen.  (See Declaration of Darren
28

                                7

Zemnick in Support of Defendant's Motion to Deny Class
Certification, filed February 4, 2008.)

In support of their claim for meal and rest period
violations, Plaintiffs assert that Defendant engaged in
a common practice of training its employees to fill out
log sheets stating they had taken a meal break when, in
fact, they had not.  Plaintiffs also contend Defendant
required its employees to sign meal period waivers,
thereby illustrating its common policy of denying meal
breaks.  With respect to illegal tip pooling, Plaintiffs
argue that the Hyatt Grand Champions had a common
practice of requiring food service employees to share
their tips with managers.

**A.   Plaintiffs' Evidentiary Showing and Defendant's
      Evidence and Objections**

Other than their own declarations, Plaintiffs have
submitted only two declarations from Hyatt Grand
Champions employees, one from Justin Armstrong, a former
manager who worked mostly in the restaurant and
Pianissimo lounge, and one from Tim DuVal, a Pianissimo
bartender.  [Jardini Decl. Ex. 6 (Declaration of Justin
Armstrong, or "Armstrong Decl."), Ex. 7 (Declaration of
Tim DuVal, or "DuVal Decl.").]

**1.   Missed meal and rest breaks**

Based on their own experiences working in the Pianissimo lounge, the Plaintiffs variously estimate that they missed one-third to two-thirds, 95% to 100%, or "nearly all" of their meal breaks.  [Jardini Decl. Ex. 3 (Declaration of Carolyn Kohler, or "Kohler Decl.") at ¶¶ 14-15, Ex. 4 (Declaration of Joanna Perez, or "Perez Decl.") at ¶ 6, Ex. 5 (Declaration of Vanessa McKeefry, or "McKeefry Decl.") at ¶ 6.]  In his declaration, Armstrong states that he was employed as an assistant outlet manager at Hyatt Grand Champions from April 2006 to January 2008.  (Armstrong Decl. ¶¶ 1-2.) He spent most of his time working in the hotel's restaurant and the Pianissimo lounge on the night shift. (<u>Id.</u> ¶¶ 3-4.)  Armstrong estimates that employees could not take their lunch or rest breaks between 20% and 50% of the time and states, "there were many instances where employees did not take meal and rest breaks."  (<u>Id.</u> ¶¶ 6, 9-10.)  He does not specify whether his estimates apply to all of Hyatt's food and beverage service operations, but based on the apparent basis of his personal knowledge, he can only offer such testimony in relation to the hotel restaurant and the Pianissimo lounge.  (<u>Id.</u> ¶ 3.)  DuVal, like Plaintiffs, worked in the Pianissimo lounge, and he estimated that he only took his meal breaks 20% of the time.  (DuVal Decl. ¶¶ 3-6.)

1    Plaintiffs have not provided any evidence concerning

2  missed meal or rest breaks for the hotel's other food

3  service employees, such as those who provided room

4  service or staffed banquets.  They offer only the

5  following speculation by Plaintiff Kohler:  "It ...

6  appeared to me that when ... other departments were

7  busy, they did not get breaks either."  (Kohler Decl. ¶

8  4.)  Kohler does not provide a basis for these

9  observations, or otherwise lay a foundation for them,

10  and the Court therefore sustains Defendant's objection

11  to this portion of her declaration.  (Def.'s Objections

12  at 9-10.)

13

14    In opposition to the Motion, Defendant has provided

15  declarations of employees in other food and beverage

16  service positions, who state they regularly took meal

17  breaks and were paid for any missed breaks.

18  [Declaration of Barbie Braun ("Braun Decl.") at ¶¶ 4-5;

19  Declaration of Andrea Balderas ("Balderas Decl.") at ¶¶

20  3-4).]  Defendant also has submitted declarations of

21  food and beverage service managers, who state the

22  employees whom they supervise take regular meal breaks.[1]

23

24    [1]The Court finds irrelevant the Declaration of Niamh
25  Byrne ("Byrne Decl."), who manages the Pianissimo lounge
    and room service, because he started in this position in
26  January 8, 2008, after the filing of the Complaint in
    this case.  (Byrne Decl. ¶ 2.)  He also cannot lay a
27  proper foundation for the work schedules attached to his
    declaration, which cover time periods before he began
28  working for Hyatt.  (Id.)

1   [Declaration of Martin Sanchez at ¶ 3; Declaration of
2   Christopher Mitchum at ¶ 3.]
3   ///
4   ///
5   ///
6       **2.   Alteration of employee time cards**
7           Plaintiffs also state in their declarations that
8   they were instructed to fill out "daily edit sheets"
9   showing they had taken meal breaks when, in fact, they
10  had not.  Plaintiff Kohler states she "was instructed by
11  management" to write in the word "window" on the daily
12  edit sheets where she otherwise would have written the
13  times she clocked out for her meal break.  (Kohler Decl.
14  ¶¶ 5-7.)  Plaintiffs Perez and McKeefry also state that
15  they were required to adopt this practice by
16  "management."  (Perez Decl. ¶¶ 9-10; McKeefry Decl. ¶¶
17  9-10.)  The Court sustains Defendant's objection to
18  Plaintiffs' additional assertions that the daily edit
19  sheets were used to alter their time cards to show a
20  lunch break had in fact been taken.  (Kohler Decl. ¶¶ 8-
21  10; Perez Decl. ¶ 10; McKeefry Decl. ¶ 11.)  Plaintiffs
22  make these assertions without laying a proper, non-
23  hearsay foundation for their knowledge that their
24  managers used the daily edit sheets to alter Plaintiffs'
25  time cards.  (Def.'s Objections at 12-13, 19-20, 25.)
26  In addition, the copies of the daily edit sheets
27  Plaintiffs have submitted are not properly
28

1  authenticated, as Plaintiffs' counsel states only that
2  Kohler provided him with photographs of the documents.
3  (Jardini Decl. ¶ 21.)  Defendant's objection to those
4  documents therefore is sustained.
5  ///

6      Defendant also objects properly to the only other
7  evidence Plaintiffs have submitted concerning the
8  alleged practice of altering employee time cards.[2]
9  Armstrong states in general fashion that he was "trained
10 to change employee time cards" and that he is "aware
11 that employees would write in the edit sheet that they
12 took their lunch break even when they had not."
13 (Armstrong Decl. ¶¶ 11-15.)  Armstrong does not,
14 however, lay a foundation for how he became "aware" that
15 employees filled out the edit sheet when they had not
16 taken a lunch break, nor does he explain how he could
17 connect a missed meal break with changes he made to
18 employee time cards.  Defendant's objections therefore
19 are sustained.  (Def.'s Objections at 29-31.)  At the
20 hearing on the Motion, Plaintiffs' counsel argued that
21 Armstrong's statement that he was directed to change
22 time cards by David Lockard, the hotel's Director of
23 Food and Beverage, is an admission by a party opponent
24 showing the hotel's general practice of doing so.
25 (Armstrong Decl. ¶ 12.)  Armstrong has not provided any
26 _____

27     [2]Though DuVal describes filling out the daily edit
   sheets, he does not make any statement concerning the
28 alteration of his time cards.  (DuVal Decl. ¶ 8.)

                          12

evidence that Lockard similarly directed managers in the
hotel's other food service outlets to adopt the same
practice, however.

///

///

///

### 3.   Meal period waivers

Plaintiffs attempt to show that Defendant had a
policy of requiring its employees to sign documents
waiving their right to off-duty meal periods.  The basis
for this assertion is Plaintiffs' submission of two
blank waiver forms and a "new hire checklist" for
Plaintiffs McKeefry and Perez, with a box next to "Meal
Period Waivers" checked off to indicate the documents
had been "reviewed, signed, and received."  (Jardini
Decl. Exs. 9-12.)  Plaintiffs have not submitted any
evidence showing that the blank meal period waiver forms
they have submitted are the ones to which the new hire
checklist refers.  Notably, none of the Plaintiffs
states in their respective declarations that she signed
any such waiver.

### 4.   Tip pooling

With respect to tip pooling, Plaintiffs provide
their own declarations, as well as DuVal's, stating that
Pianissimo employees pooled their tips and shared them
with managers or supervisors on certain occasions.

13

1   (Kohler Decl. ¶¶ 16-22; Perez Decl. ¶¶ 11-14; McKeefry
2   Decl. ¶¶ 13-15; DuVal Decl. ¶¶ 9-12.)

3

4       Plaintiffs have not submitted any evidence
5   concerning tip-pooling practices in other food and
6   beverage service outlets at the hotel, however.
7   ///
8       In light of the state of the evidentiary record on
9   their Motion, Plaintiffs are hard-pressed to show the
10  presence of issues subject to resolution by common proof
11  for the class they seek to certify.[3]

12

13  **B.   Commonality and Typicality**
14      As an initial matter, the Court finds that
15  Plaintiffs have not made an adequate showing that they
16  share common questions of law or fact with the proposed
17  class, under Rule 23(a)(2), or that their claims are
18  typical of the proposed class under Rule 23(a)(3).

19

20      **1.   Commonality**
21      Courts have construed Rule 23(a)(2)'s commonality
22  requirement permissively.  Staton v. Boeing Co., 313
23  F.3d 447, 462 (9th Cir. 2002).  As the Ninth Circuit has
24  explained:

25

26  _____
27      [3]Other than the objections on which the Court has
    ruled, Defendant's remaining objections are addressed to
28  evidence that is not necessary for resolution of the
    Motion or are otherwise without merit and overruled.

1    All questions of fact and law need not be
2    common to satisfy the rule. The existence
3    of shared legal issues with divergent
4    factual predicates is sufficient, as is
5    a common core of salient facts coupled
6    with disparate legal remedies within the
7    class.
8  Id. (quoting Hanlon v. Chrysler Corp., 150 F.3d 1011,
9  1019 (9th Cir. 1998)).

10

11    Even under this permissive standard, however,
12 Plaintiffs have not made a sufficient showing of any
13 issue of law or fact shared with other members of the
14 proposed class.  They have not provided any admissible
15 evidence showing that employees, other than those at the
16 Pianissimo lounge or the hotel restaurant, regularly
17 missed meal and rest breaks or altered their time cards
18 to reflect falsely that they had taken a break.
19 Similarly, they have not shown that employees other than
20 those at the Pianissimo lounge participated in tip
21 pooling.  At best, Plaintiffs have made a showing of
22 commonality with respect to their own employment and
23 that of two other employees, who worked exclusively or
24 primarily in the Pianissimo lounge and one other
25 restaurant at the hotel.  Plaintiffs therefore fail to
26 satisfy the commonality requirement of Rule 23(a).
27
28

**2. Typicality**

To gauge typicality, a "court does not need to find that the claims of the purported class representative are identical to the claims of the other class members." <u>Haley</u>, 169 F.R.D. at 649.  The Ninth Circuit in <u>Hanlon</u> further wrote that "[u]nder the rule's permissive standards, representative claims are 'typical' if they are reasonably co-extensive with those of absent class members; they need not be substantially identical."  150 F.3d at 1020.  Additionally, the class representatives "must be able to pursue [their] claims under the same legal or remedial theories as the unrepresented class members." <u>Paxil</u>, 212 F.R.D. at 549.  While commonality requires only one unifying factual or legal question, typicality requires "'that the claims of the class representatives be typical of those of the class'" and is achieved "'when each member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability.'"  <u>Id.</u> at 550 (quoting <u>Armstrong v. Davis</u>, 275 F.3d 849, 868 (9th Cir. 2001)).

Again, Plaintiffs have not made a sufficient showing that their claims are "reasonably co-extensive" with other potential class members, even under the permissive standard for finding typicality.  Indeed, they have not even shown that members of the putative class who did

16

1  not work in Pianissimo were subject to a policy or
2  practice of missing meal breaks or tip pooling.
3  Plaintiffs therefore fail to satisfy the typicality
4  requirement of Rule 23(a).
5  ///
6  ///
7  ///
8  **C.   Adequacy of Representation**
9      Defendant has raised concerns about the adequacy of
10  representation that Plaintiffs and their counsel would
11  provide for the putative class.  Plaintiffs did not
12  appear for their noticed depositions and have not
13  provided any initial disclosures pursuant to Rule
14  26(a)(1) of the Federal Rules of Civil Procedure.
15  (Declaration of Ayesha A. Attoh ("Attoh Decl.") ¶¶ 4-6,
16  12 & Ex. A.)  At the hearing on the Motion, Plaintiffs'
17  counsel represented that Plaintiffs did not make any
18  initial disclosures because they have no documents in
19  their possession to produce.  Documents are not the only
20  item to be disclosed under Rule 26(a)(1), however.
21  Plaintiffs also were obligated to provide "the name and,
22  if known, the address and telephone number of each
23  individual likely to have discoverable information ...
24  that the disclosing party may use to support is claims,"
25  and "a computation of each category of damages claimed
26  by the disclosing party."  Rule 26(a)(1)(A)(i), (iii).
27  The failure to make such disclosures and to cooperate in
28

1  the taking of Plaintiffs' depositions casts doubt on the
2  adequacy of Plaintiffs and their counsel to pursue the
3  claims asserted here on behalf of the putative class.
4  ///
5  ///
6  ///
7  ///
8  **D.   Predominance of Common Issues and Superiority of**
9  **Class Treatment**
10      Even if Plaintiffs could satisfy all four of the
11  requirements of Rule 23(a), the proposed class could not
12  be certified under Rule 23(b)(3), which requires a
13  showing that "the questions of law or fact common to
14  class members predominate over any questions affecting
15  only individual members" and that class treatment be
16  superior to other methods of adjudication.  Fed. R. Civ.
17  P. 23(b)(3).
18
19      With respect to the meal and rest break claims,
20  Plaintiffs have identified the common questions as
21  "whether Hyatt violated wage and hour laws, in adopting
22  a policy and practice to <u>fail to ensure</u> that nonexempt
23  employees are provided required meal breaks" and "in
24  adopting a policy and practice of <u>failing to make</u>
25  <u>available</u> required rest breaks."  [Mot. at 18:1-4
26  (emphasis added).]  Recent decisions by federal district
27  courts in California have held that an employer does not
28

violate wage and hour law by "failing to ensure" that
its employees take meal and rest breaks.  Rather, an
employer's obligation is to "offer meal breaks," rather
than "actively to ensure that workers are taking these
breaks."  White v. Starbucks Corp., 497 F. Supp. 2d
1080, 1088-89 (N.D. Cal. 2007) (Walker, J.).  An
employee must show that he was "forced to forego his
meal breaks, as opposed to merely showing that he did
not take them regardless of the reason."  Id.; see also
Kenny v. Supercuts, Inc., No. C 06-07521 CRB, 2008 WL
2265194, at *3-4 (Breyer, J.) (quoting White); Brown v.
Fed. Express Corp., No. CV 07-5011 DSF (PJWx), 2008 WL
906517, at *6 (Fischer, J.) (quoting White).

    Under this recent case law, then, resolution of the
common question Plaintiffs have identified -- whether
Hyatt "failed to ensure" that its employees took
appropriate breaks, or failed to make them available --
would not resolve the issue of Hyatt's liability for
statutory wage violations.  See Kenny, 2008 WL 2265194
at *6 ("plaintiff has failed to identify any theory of
liability that presents a common question").  Rather,
the factfinder would have to conduct individualized
inquiries into whether an employee had been "forced to
forego" meal breaks.  Even with respect to an individual
employee, the evidence supporting such a claim could
vary depending on the circumstances of each particular

1  missed meal break.  This common question therefore does
2  not "predominate," and individualized inquiries
3  concerning the circumstances of each class member's
4  separate missed meal breaks would have to be conducted.
5  <u>Id.</u>
6
7      The case Plaintiffs rely on to argue to the contrary
8  upheld summary judgment on a meal break claim and stated
9  that employers have "an affirmative obligation to ensure
10 that workers are actually relieved of all duty" and
11 provided with the required meal periods.  <u>Cicairos v.</u>
12 <u>Summit Logistics, Inc.</u>, 133 Cal. App. 4th 949, 962
13 (2005).  The federal district courts that have addressed
14 this issue have found this language in <u>Cicairos</u> to
15 exceed the liability provided for by the California
16 Labor Code, and have also limited that decision to its
17 particular facts.  <u>White</u>, 497 F. Supp. 2d at 1088-89;
18 <u>Brown</u>, 2008 WL 906517, at *6; <u>Kenny</u>, 2008 WL 2265194 at
19 *5.  Though the Court is not bound by the decisions of
20 sister district courts, it nevertheless finds the
21 reasoning of those federal decisions to be persuasive
22 and rejects Plaintiffs' contention that California law
23 requires Hyatt affirmatively to ensure that each of its
24 employees took appropriate meal and rest breaks.  As
25 stated in <u>White</u>, the rule that Plaintiffs advance would
26 require "an employer with no reason to suspect that
27 employees were missing breaks ... to find a way to force
28

1  employees to take breaks or would have to pay an

2  additional hour of pay every time an employee

3  voluntarily chose to forego a break.  ...  This cannot

4  have been the intent of the California Legislature...."

5  <u>White</u>, 497 F. Supp. 2d at 1089.

6

7     Moreover, in light of Plaintiffs' inability to show

8  that the practices they challenge occurred anywhere

9  other than the Pianissimo lounge, the superiority of

10 class-wide resolution of their claims is dubious.

11

12    Accordingly, the Court denies certification of the

13 proposed class under Rule 23(b)(3).[4]

14

15 **E.   Risk of Inconsistent Results**

16    Plaintiffs also assert that a class should be

17 certified under Rule 23(b)(1), though they make only a

18 cursory argument on this point.  (Mot. at 20:18-21.)

19 They argue that the "risk of inconsistent adjudications

20 is apparent, as is the danger of establishing

21 incompatible standards for Hyatt Corporation, as

22 injunctive relief is also sought."

23

24

_____

25    [4]At the hearing on the Motion, Plaintiffs' counsel

26 made an oral request to certify for interlocutory appeal
   the issue of an employer's obligation to provide meal and

27 rest breaks under California law.  The Court DENIES the
   request, because Plaintiffs' Motion would be denied even

28 if this issue were to be resolved in their favor.

1   The Court finds, however, that Plaintiffs' primarily
2   seek relief in the form of damages representing lost
3   wages.  Certification under Rule 23(b)(1)(A) "requires
4   more than a risk that separate judgments would oblige
5   the opposing party to pay damages to some class members
6   but not to others or to pay them different amounts."
7   7AA Charles Alan Wright, Arthur R. Miller, & Mary Kay
8   Kane, Federal Practice and Procedure § 1773 (3d ed.
9   2005).

10

11   Accordingly, the Court denies Plaintiff's Motion to
12   certify a class under Rule 23(b)(1).

13

14   **F.  Discovery Issues**
15   Plaintiffs claim that Hyatt's failure to respond to
16   certain discovery requests has precluded them from
17   obtaining certain evidence to support their Motion.
18   (Mot. at 4:12-26.)  According to Plaintiffs, Defendant
19   did not produce a person most knowledgeable for certain
20   topics of information listed in their deposition notice.
21   (Id. at 4:14-16.)  Defendant also did not produce Paula
22   Jebbia and Gaston Lopez for depositions.  (Id. at 6:17-
23   19.)  According to Defendant, however, Hyatt objected to
24   producing witnesses on some of the topics for which
25   Plaintiffs requested a person most knowledgeable, and
26   Plaintiffs never moved to compel those depositions.
27   (Attoh Decl. ¶ 3.)  In addition, Plaintiffs attempted to
28

22

serve a deposition subpoena for Ms. Jebbia, who is not a
managing agent of the hotel, on the hotel's human
resources department.  (<u>Id.</u> ¶ 7.)  Plaintiffs also
attempted to serve deposition notices for Ms. Jebbia and
Mr. Lopez, a former employee, on Defendant's counsel.
(<u>Id.</u> ¶ 9.)  Those notices set the depositions for a date
only two days after service, which also represented the
discovery cut-off date set by the Court.  (<u>Id.</u>)
Moreover, Plaintiffs' counsel sought to depose these
witnesses on a date they had previously represented they
were unavailable for the taking of Plaintiffs'
depositions.  (<u>Id.</u> ¶ 7.)

     In light of Plaintiffs' failure to pursue discovery
diligently, their claim that Hyatt has precluded them
from obtaining the evidence needed to support their
Motion is unpersuasive.

### IV. CONCLUSION

     For the foregoing reasons, the Court DENIES
Plaintiffs' Motion for Class Certification.


Dated:  ___July 23, 2008___     _____
                                VIRGINIA A. PHILLIPS
                                United States District Judge

23